UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| **MICHAEL K. ROBERTSON,** | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 4:20-CV-01579-NCC |
| | ) |
| **KILOLO KIJAKAZI,**[1] | ) |
| **Acting Commissioner of Social Security,** | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM AND ORDER**

This is an action under Title 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner denying the application of Michael K. Robertson ("Plaintiff") for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401, *et seq*. Plaintiff has filed a brief in support of the Complaint (Doc. 15), Defendant has filed a brief in support of the Answer (Doc. 22), and Plaintiff has filed a reply brief (Doc. 23). The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to Title 28 U.S.C. § 636(c) (Doc. 5).

**I. PROCEDURAL HISTORY**

Plaintiff filed his application for DIB on August 2, 2018 (Tr. 148-54). Plaintiff was initially denied on December 18, 2018, and he filed a Request for Hearing before an Administrative Law Judge ("ALJ") (Tr. 72-79). After a hearing, by decision dated February 19,

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi shall be substituted for former Commissioner Andrew Saul as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

2020, the ALJ found Plaintiff not disabled (Tr. 6-25).  On April 29, 2020, the Appeals Council denied Plaintiff's request for review (Tr. 1-5).  As such, the ALJ's decision stands as the final decision of the Commissioner.

## II. DECISION OF THE ALJ

The ALJ determined that Plaintiff meets the insured status requirements of the Social Security Act through June 30, 2023, and has not engaged in substantial gainful activity since December 12, 2017, his alleged onset date (Tr. 11).  The ALJ found Plaintiff has the severe impairments of radial tunnel syndrome, cubital tunnel syndrome, osteoarthritis of the right elbow, ulnar neuropathy status-post radial nerve release, radial tunnel release, ulnar nerve transposition, and obesity, but that no impairment or combination of impairments meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 11-14).  After considering the entire record, the ALJ determined Plaintiff has the residual functional capacity ("RFC") to perform light work with the following limitations (Tr. 15).  Plaintiff can never climb ladders, ropes or scaffolds (*Id.*).  Plaintiff can frequently reach with the right arm and frequently handle, finger, and feel with the right hand (*Id.*).  Plaintiff can also have occasional exposure to vibration and extreme cold temperatures (*Id.*).  The ALJ found that Plaintiff was unable to perform any past relevant work but that, considering Plaintiff's age, education, work experience, and residual functional capacity, Plaintiff has acquired work skills from past relevant work that are transferable to other occupations with jobs existing in significant numbers that Plaintiff could perform during this time including the representative occupation of security guard (Tr. 20-21).  Thus, the ALJ concluded that Plaintiff has not been under a disability from December 12, 2017, through the date of the decision (Tr. 21).

### III. LEGAL STANDARD

Under the Social Security Act, the Commissioner has established a five-step process for determining whether a person is disabled. 20 C.F.R. § 404.1529. "If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled." *Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005) (quoting *Eichelberger v. Barnhart*, 390 F.3d 584, 590-91 (8th Cir. 2004)). In this sequential analysis, the claimant first cannot be engaged in "substantial gainful activity" to qualify for disability benefits. 20 C.F.R. § 404.1520(b). Second, the claimant must have a severe impairment. 20 C.F.R. § 404.1520(c). The Social Security Act defines "severe impairment" as "any impairment or combination of impairments which significantly limits [claimant's] physical or mental ability to do basic work activities. . . ." *Id.* "'The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on [his or] her ability to work.'" *Page v. Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007) (quoting *Caviness v. Massanari*, 250 F.3d 603, 605 (8th Cir. 2001), citing *Nguyen v. Chater*, 75 F.3d 429, 430-31 (8th Cir. 1996)).

Third, the ALJ must determine whether the claimant has an impairment which meets or equals one of the impairments listed in the Regulations. 20 C.F.R. § 404.1520(d). If the claimant has one of, or the medical equivalent of, these impairments, then the claimant is per se disabled without consideration of the claimant's age, education, or work history. *Id.*

Fourth, the impairment must prevent the claimant from doing past relevant work. 20 C.F.R. § 404.1520(f). The burden rests with the claimant at this fourth step to establish his or her RFC. *Steed v. Astrue*, 524 F.3d 872, 874 n.3 (8th Cir. 2008) ("Through step four of this analysis, the claimant has the burden of showing that she is disabled."). The ALJ will review a

3

claimant's RFC and the physical and mental demands of the work the claimant has done in the past.  20 C.F.R. § 404.1520(f).

Fifth, the severe impairment must prevent the claimant from doing any other work.  20 C.F.R. § 404.1520(g).  At this fifth step of the sequential analysis, the Commissioner has the burden of production to show evidence of other jobs in the national economy that can be performed by a person with the claimant's RFC.  *Steed*, 524 F.3d at 874 n.3.  If the claimant meets these standards, the ALJ will find the claimant to be disabled.  "The ultimate burden of persuasion to prove disability, however, remains with the claimant."  *Young v. Apfel,* 221 F.3d 1065, 1069 n.5 (8th Cir. 2000).  *See also Harris v. Barnhart*, 356 F.3d 926, 931 n.2 (8th Cir. 2004) (citing 68 Fed. Reg. 51153, 51155 (Aug. 26, 2003)); *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004) ("The burden of persuasion to prove disability and to demonstrate RFC remains on the claimant, even when the burden of production shifts to the Commissioner at step five.").  Even if a court finds that there is a preponderance of the evidence against the ALJ's decision, the decision must be affirmed if it is supported by substantial evidence.  *Clark v. Heckler*, 733 F.2d 65, 68 (8th Cir. 1984).  "Substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion."  *Krogmeier v. Barnhart*, 294 F.3d 1019, 1022 (8th Cir. 2002).  *See also Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007).

It is not the job of the district court to re-weigh the evidence or review the factual record de novo.  *Id.*  Instead, the district court must simply determine whether the quantity and quality of evidence is enough so that a reasonable mind might find it adequate to support the ALJ's conclusion.  *Davis v. Apfel*, 239 F.3d 962, 966 (8th Cir. 2001) (citing *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000)).  Weighing the evidence is a function of the ALJ, who is the fact-

4

finder. *Masterson v. Barnhart*, 363 F.3d 731, 736 (8th Cir. 2004). Thus, an administrative decision which is supported by substantial evidence is not subject to reversal merely because substantial evidence may also support an opposite conclusion or because the reviewing court would have decided differently. *Krogmeier*, 294 F.3d at 1022.

## IV. DISCUSSION

In his appeal of the Commissioner's decision, Plaintiff raises two issues. First, Plaintiff asserts that the ALJ failed to properly evaluate Plaintiff's mental impairments at step 2 (Doc. 15 at 6-12). Second, Plaintiff argues that the ALJ failed to properly consider Plaintiff's subjective reports of pain and functional limitations due to his right upper extremity impairment (*Id.* at 12-17). Because the ALJ erred in not finding that Plaintiff's mental impairments, specifically Plaintiff's depression, were severe impairments, the Court will address that issue alone.

At Step 2, the Commissioner must determine whether a claimant has a severe impairment. "An impairment or combination of impairments is not severe if it does not significantly limit your physical or mental ability to do basic work activities." 20 C.F.R. § 404.1521. While a claimant has the burden of showing a severe impairment that severely limits his physical or mental ability to perform basic work activities, the burden "is not great" and "[t]he sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on [his] ability to work." *Caviness*, 250 F.3d at 605. Basic work activities are those "abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 404.1521(b).

The ALJ erred in not finding that Plaintiff's mental health impairments to be severe. Although Plaintiff did not specifically list a mental health condition as limiting his ability to work, on his disability report associated with his initial application he described his general

5

condition as including, "trouble sleeping/insomnia . . . feelings of anxiety, feelings of depression" (Tr. 177, 184).  Plaintiff also indicated that of the three medications he was taking at the time, two of them were for his depression (Tr. 180).  Indeed, Plaintiff's treating mental health providers have diagnosed Plaintiff with major depressive disorder and post-traumatic stress disorder (*See, e.g.,* Tr. 44, 386).  While a diagnosis alone is insufficient to establish a severe impairment, here the record is replete with Plaintiff's reports of, and treatment for, depression.  During the relevant period, Plaintiff participated in therapy with John Feely, Ph.D. ("Dr. Feely") and medication management with James Cho, M.D. ("Dr. Cho").  *Cf. Shannon v. Chater*, 54 F.3d 484, 486 (8th Cir. 1995) (the failure to seek treatment may be considered as inconsistent with a finding of disability); *Lawson v. Colvin*, No. 4:13-CV-1361 SNLJ, 2014 WL 4269050, at *15 (E.D. Mo. Aug. 28, 2014) (finding the plaintiff not disabled when "[t]he record shows she neither sought nor received psychiatric treatment during the time of her alleged disability.").  Despite Plaintiff's compliance with his psychotropic medication, Plaintiff still reported very poor energy, poor quality of sleep, terrible energy, and feelings of guilt and worthlessness (Tr. 605-13).  Plaintiff was also found to have difficulty concentrating, to be feeling down, depressed or hopeless, and to have little interest or pleasure in doing things (Tr. 437).  *See also* Tr. 543-43 ("Problems with Depression"; "Recent struggle with fatigue and lack of motivation.").  For example, in April 2018, Plaintiff reported that his depression "is much worse since the last visit" and that he had been in bed about 12-16 hours a day though only sleeping about 6 hours a day (Tr. 395).  Plaintiff's medications were adjusted somewhat frequently including at this visit, suggesting his conditions were not controlled despite his consistent treatment (Tr. 396, 607).  *Cf. Brown v. Barnhart*, 390 F.3d 535, 540 (8th Cir. 2004) (internal quotation marks and citation omitted) ("If an impairment can be controlled by treatment or medication, it cannot be

6

considered disabling."). At the time of his hearing on November 21, 2019, Plaintiff testified that he continued to have difficulty dealing with people; "I tend to avoid people" even with the medication which he acknowledged helps (Tr. 44). Plaintiff was frequently asked to complete the Patient Health Questionnaire ("PHQ-9"),[2] including at nearly every visit with his treating psychiatrist, Dr. Cho, which showed moderately severe depression (Tr. 436-37, 605-13).

Additionally, the medical opinion evidence indicates that Plaintiff's depression specifically is perhaps more limiting than is suggested by the ALJ. While the ALJ credited as "partially persuasive" the December 10, 2018 opinion of Dr. Martin Isenberg, Ph.D., a state agency medical consultant, that Plaintiff's major depression was non-severe, Plaintiff's treating providers found Plaintiff to be significantly more limited (Tr. 14). Specifically, in his November 19, 2019 Medical Source Statement-Mental, Dr. Cho opined that Plaintiff would be off task 10 to 15 percent of the day (Tr. 626). Dr. Cho further opined that Plaintiff is markedly limited in the areas of the ability to work in coordination with or proximity to others without being distracted by them and the ability to accept instructions and respond appropriately to criticism from supervisors (Tr. 626-27). Dr. Cho found Plaintiff to be moderately limited in the following areas: the ability to understand and remember detailed instructions; the ability to carry out detailed instructions; the ability to maintain attention and concentration for extended periods; the ability to make simple work related decisions; the ability to interact appropriately with the general public; the ability to ask simple questions or request assistance; the ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes; the ability to

---

[2] "PHQ-9 is the nine item depression scale of the Patient Health Questionnaire. The PHQ-9 is a tool for assessing primary care clinicians in diagnosing depression as well as selecting and monitoring treatment." *Castiner v. Astrue*, No. 2:10 CV 17 DDN, 2011 WL 902964, at *2 n.4 (E.D. Mo. Mar. 15, 2011)

7

maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness; the ability to respond appropriately to changes in the work setting; and the ability to be aware of normal hazards and take appropriate precautions (*Id.*).

Similarly, Dr. Feely, in his November 12, 2019 Medical Source Statement-Mental, indicated that Plaintiff suffers from the following depressive symptoms: anhedonia or pervasive loss of interest in almost all activities; sleep disturbance; decreased energy; feelings of guilt or worthlessness; difficulty concentrating or thinking; and thoughts of suicide and that his activities of daily living are markedly restricted by his depression (Tr. 580). Dr. Feely opined that Plaintiff was markedly limited in his ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest period and moderately limited in his ability to maintain attention and concentration for extended periods, ability to sustain an ordinary routine without special supervision, ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes, and ability to set realistic goals or make plans independently of others (Tr. 581-82). Dr. Feely further opined that Plaintiff would be off task more than 25% of the time (Tr. 583).

Given this medical opinion record, Plaintiff's attorney requested a psychiatric consultative examination during Plaintiff's hearing (Tr. 54-55). However, the ALJ never addressed Plaintiff's request contrary to the Commissioner's internal guidance to address all prehearing requests or motions (*See* Tr. 9-21). HALLEX I-2-6-52(E). In fact, the ALJ indicated that she would hold open the record and then make a determination about the consultative examination (Tr. 55-56). However, there is a Circuit split as to whether HALLEX is binding on the agency and the Eighth Circuit Court of Appeals has not considered this issue. *Compare*

*Moore v. Apfel*, 216 F.3d 864, 868-69 (9th Cir. 2000) (finding that HALLEX has no legal force); *with Newton v. Apfel*, 209 F.3d 448, 456 (5th Cir. 2000) (HALLEX is not binding law but administrative agencies should follow their own internal regulations).  Regardless, this exchange is informative as Plaintiff's primary mental health provider's, Dr. Feely, notes are illegible (*See* Tr. 585-600).  Plaintiff should not be penalized for the handwriting skills of his primary mental health provider especially when, as addressed above, Dr. Feely completed a medical source statement clearly indicating that Plaintiff is significantly limited as a result of his mental health conditions.  Instead of further developing the record either by reaching out to Dr. Feely or seeking a consultative examination, the ALJ improperly relied on the opinion of the state agency non-examining physician.  *Noerper v. Saul*, 964 F.3d 738, 747 (8th Cir. 2020) (finding the Commissioner had failed to meet his duty to develop the record when the ALJ relied on the opinion of a state agency physician predating the majority of treatment and failed to properly discuss a choice between conflicting medical evidence).

  Finally, and perhaps most importantly, the ALJ did not consider Plaintiff's mental impairments, specifically his depression, when determining Plaintiff's RFC.  *Ford v. Astrue*, 518 F.3d 979, 981 (8th Cir. 2008).  *See also Brockman v. Berryhill*, No. 2:16-CV-00032 JAR, 2017 WL 4339502, at *4 (E.D. Mo. Sept. 29, 2017); 20 C.F.R. § 404.1545(a)(2) ("If you have more than one impairment.  We will consider all of your medically determinable impairments of which we are aware, including your medically determinable impairments that are not 'severe,' as explained in §§ 404.1520(c), 404.1521, and 404.1523, when we assess your residual functional capacity.").  The RFC determination does not include any non-exertional limitations nor does the ALJ's analysis include any indication that she considered Plaintiff's mental impairments in her RFC determination.  *Cf. Givans v. Astrue*, No. 4:10-CV417-CDP, 2012 WL 1060123, at *17

9

(E.D. Mo. Mar. 29, 2012) (holding that even if the ALJ erred in failing to find one of the plaintiff's impairments to be severe, the error was harmless because the ALJ found other severe impairments and considered both those impairments and the plaintiff's non-severe impairments when determining Plaintiff's RFC).

Accordingly, the Court finds that remand is required because the ALJ's determination that Plaintiff's depression was not a severe impairment is not supported by substantial evidence.

## V. CONCLUSION

For the foregoing reasons, the Court finds the ALJ's decision was not based on substantial evidence in the record as a whole and should be reversed and remanded. On remand, the ALJ is directed to reconsider Plaintiff's severe impairments at step two; further develop the medical record if necessary; and then proceed through the sequential evaluation process before issuing a new decision.

**IT IS HEREBY ORDERED** that this action is **REVERSED AND REMANDED** to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) for further consideration in accordance with this Memorandum and Order.

A separate judgment shall be entered incorporating this Memorandum and Order.

Dated this 1st day of February, 2022.

                                                /s/ Noelle C. Collins  
                                               NOELLE C. COLLINS  
                                               UNITED STATES MAGISTRATE JUDGE